## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES WALTER ROBINSON,     )
     )
     Plaintiff,     )
     )
     v.     )     **CIVIL ACTION**
     )     **No. 05-cv-4995**
GEO CORPORATION, et al.,     )
     )
     Defendants.     )

**FILED**

DEC 1 2 2008

MICHAEL E. KUNZ, Clerk

By _____ Dep. Clerk

---

## MEMORANDUM OPINION & ORDER

Rufe, J.

December 12, 2008

    Plaintiff James Walter Robinson brings this action against Defendants The GEO Group, Inc. ("GEO"),[1] Ronald Nardolillo, Theresa Kesteloot[2] and Nancy Fennell alleging violations of his civil rights under the United States Constitution during his term of imprisonment at George W. Hill Correctional Facility ("GWHCF"). Now before the Court are the Motion of Defendants GEO, Nardolillo and Fennel for Summary Judgment,[3] Plaintiff's Response and Defendants' Reply. For the reasons set forth below, the Motion will be granted.

## I. BACKGROUND

    Plaintiff was imprisoned at GWHCF from January 8, 2005 to April 2, 2006.[4] Defendant

---

[1] The Court notes that Plaintiff's complaint, and therefore, the caption of this case list this Defendant as GEO Corporation. Plaintiff, however, does not dispute that The GEO Group, Inc. is the actual name of this Defendant, and the Court will refer to this Defendant as such. See Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. [Document No. 42] ("Defs.' Mem.") at *1.

[2] The Court notes that Plaintiff also does not dispute that this is the proper spelling of this Defendant's last name. See Defs.' Mem. at *2.

[3] Defendant Kesteloot was never served and for that reason, does not join the instant Motion. See Defs.' Mem. at *2 n.2. The Court dismissed Plaintiff's claims against Defendant Kesteloot in a December 11, 2008 Order.

[4] Defs. The GEO Group, Inc., Warden Ronald Nardolillo and Nancy Fennell's Mot. for Summ. J. Pursuant to F.R.C.P. 56 [Document No. 42] ("Defs.' Mot.") Ex. F [Document No. 43] at *1, *8. Plaintiff does not dispute any aspect of this summary of his medical records, as prepared by Defendant GEO. In its independent review of

GEO is a corporation that at all times relevant to this litigation contracted with Delaware County Board of Prison Inspectors to provide daily functional services at GWHCF, including security, medical and food services.[5]  During the relevant time period, Defendant Nardolillo was warden of GWHCF and Defendant Fennell was the food service manager.[6]

During his March 19, 2008 deposition, Plaintiff stated that he was housed with two other people in a cell designed to hold two, otherwise known as "triple-celling."[7]  Plaintiff did not recall how long he was subject to triple-celling.[8]  According to Plaintiff, two inmates would sleep on bunk beds and a third would sleep on the floor near the toilet, placing a mattress either on the floor on in a plastic container known as a boat.[9]  Plaintiff stated that he slept on the floor or on the bottom bunk.[10]  Plaintiff stated that as a result of triple-celling, he suffered from difficulties with breathing, abnormal colds, and being overcrowded, in general.[11]

Prior to his arrival at GWHCF, Plaintiff had a history of hypertension and had been diagnosed with HIV.[12]  During his time at GWHCF, Plaintiff received extensive medical

---

Plaintiff's medical records, the Court did not identify any discrepancies.

[5] Defs.' Mem. at *2.

[6] Id.

[7] Defs.' Mot. Ex. D (Deposition of James Walter Robinson) ("Pl.'s Dep.") at 27:15-28:5.

[8] Id. at 28:6-12.

[9] Id. at 28:21-29:13.

[10] Id. at 28:16-20.

[11] Id. at 31:14-19.

[12] Defs.' Mot. Ex. F at *1.

treatment for an array of physical ailments.[13]  A reducible umbilical hernia was first noted in

Plaintiff's GWHCF medical records on January 25, 2005.[14]  Plaintiff's medical records reflect

that the hernia was reduced on March 12, 2005.[15]  On August 17, 2005, Plaintiff reported

continuing pain from the protruding hernia, but also reported he was not wearing his supportive

device.[16]  During his deposition, Plaintiff stated that he was unclear as to when he developed the

hernia.[17]  Plaintiff complained that his hernia was never surgically removed and that the only

treatment he received at GWHCF was to have it reduced.[18]

On February 24, 2005, Plaintiff's medical records show he reported a broken tooth.[19]  The

parties dispute how many times Plaintiff requested to see the dentist and when Plaintiff actually

first saw the dentist.[20]  According to Plaintiff's medical records, the dentist saw Plaintiff on

October 28, 2005, and again on November 9, 2005 and November 11, 2005.[21]  Plaintiff's medical

records also reflect that two of Plaintiff's teeth were extracted on December 16, 2005 and a

follow-up appointment was ordered for continued extractions.[22]  The records do not show a

---

[13] Id. at *1-*8.

[14] Id. at *2.

[15] Id. at *3.

[16] Id. at *5.

[17] Pl.'s Dep. at 80:9-15.

[18] Id. at 80:16-82:10.

[19] Defs.' Mot. Ex. F. at *2.

[20] Pl.'s Dep. at 34:9-37:14.

[21] Defs.' Mot. Ex. F. at *6-*7.

[22] Id. at *7.

3

follow-up appointment or any additional extractions before Plaintiff was discharged in April of 2006.[23] Plaintiff testified during his deposition that he did not receive any dental care and that the dentist only looked at his teeth, but never fixed them.[24] Plaintiff denies that any of his teeth were extracted.[25]

On March 3, 2005, a nurse wrote Plaintiff a special dietary needs pass for a bland, high fiber, low salt, low fat and low cholesterol diet with an evening snack for the length of his incarceration.[26] Plaintiff's diet was officially changed on October 1, 2005 to bland, low salt, low glucose and high fiber with an evening snack.[27] Yet, Plaintiff stated during his deposition that he did not receive meals in compliance with his prescribed dietary needs.[28] Plaintiff stated that he was given the same food everyone else was given.[29] He stated that he discussed this issue with the kitchen staff and with the prison nurses, to no avail.[30]

Throughout his term of imprisonment at GWHCF, Plaintiff was prescribed various medications to treat a variety of ailments ranging from HIV, hypertension, and blood pressure to pain, indigestion and itchiness.[31] According to Plaintiff's deposition testimony, Plaintiff did not

---

[23] Id. at *7-*8.

[24] Pl.'s Dep. at 39:7-40:9.

[25] Id. at 40:10-11.

[26] Defs.' Mot. Ex. F. at *3.

[27] Id. at *6.

[28] Pl.'s Dep. at 43:12-22.

[29] Id. at 49:15-52:6.

[30] Id. at 44:11-45:23.

[31] See Defs.' Mot. Ex. F.

4

receive the proper medication on ten to fifteen occasions, and on about five occasions, he received no medication at all.[32]  During Plaintiff's incarceration, medication was delivered in one of two ways: (1) through a "Pill Run," during which medication was delivered to each cell individually;[33] and (2) through "Pill Call Times," during which inmates at a designated time would go to a pill cart to receive their medications.[34]  Plaintiff stated that the procedure was switched from "Pill Run" to "Pill Call Times" in January 2005.[35]  During the "Pill Call Times," Plaintiff stated that the Medical Administration Records ("MAR") book, with each inmate's name and prescribed medication, was open for all to see.[36]  According to Plaintiff, his medication was seen and discussed several times by inmates and correctional staff standing near the MAR book.[37]

Plaintiff also related during his deposition one incident in which he had not gone to the cart to get his medication, but had gone to "medical" instead.[38]  He was handed the wrong medication by a nurse and told her so, to which she responded, "This is your HIV meds."[39]  According to Plaintiff, this occurred in the presence of three to four other inmates and

---

[32] Pl.'s Dep. at 70:22-71:23.

[33] Id. at 55:18-20; Defs.' Mot. Ex. M.

[34] Pl.'s Dep. at 56:21-23; 58:11-14; Defs.' Mot. Exs. K, L, and N.

[35] Pl.'s Dep. at 56:4-23.

[36] Id. at 53:3-19.

[37] Id. at 53:19-54:4; 59:18-60:6; 64:11-67:3.

[38] Id. at 60:11-13.

[39] Id. at 60:13-25.

correctional staff.[40]  Plaintiff stated that this incident led to several people questioning him after

they were told by officers working in medical to be careful around Plaintiff because he was HIV

positive.[41]  Plaintiff stated that these were the only two ways in which he felt his medical

confidentiality was breached.[42]

      In Defendant GEO's Manual of Policies and Procedures for Health Services, Policy No.

405.18 dictates the administration of medicine and requires that it be dispensed in accordance

with physician orders.[43]  Under Policy No. 802, providing for the confidentiality of inmate health

records and information, Defendant GEO's policy is to secure health records at all times and

allow access only to authorized Health Services personnel.[44]  Pertinent inmate medical

information will be shared, however, with "correctional staff about those inmates whose

physical/mental limitations may cause some concern, i.e. diabetics, epileptics, mental health

clients, and clients with communicable diseases, etc."[45]  On July 22, 2005, a memo was sent to

the medical staff from Defendant Kesteloot stating the following:

> Effective immediately, all IS medications will be given at pill call times on the units. There
> have been several complaints form [sic] offenders getting KOP IS medications and these
> medications require refrigeration. These complaints have made it all the way to the Warden
> and "attorney" has been mentioned in a memo to him. Therefore, all IS MARs are to be
> placed in the front of your MAR books and checked prior to leaving the department to make
> sure the correct medication is on the cart. I also expect each offender to receive their
> medication with some degree of confidentiality. Only one offender at the med-cart at one

---

[40] Id. at 60:16; 61:2-9.; 62:18-63:12.

[41] Id. at 63:15-64:4.

[42] Id. at 68:16-23.

[43] Defs.' Mot. Ex. G at *1.

[44] Defs.' Mot. Ex. H at *1.

[45] Id.

time. Have the MAR book open to only the offender that you are giving medications too [sic]. Also, remember that there are no "NO-Shows". [sic] If an IS offender does not show up, have the officer got to the cell and get the offender out. If the offender refuses his medications, **HE MUST SIGN A REFUSAL FORM EACH TIME HE/SHE REFUSES.** If there are any question or concerns, please contact me as soon as possible.[46]

On October 4, 2005, Plaintiff filed his original complaint *pro se*, alleging violations of his civil rights.[47]  Still *pro se*, he then filed an Amended Statement of Claim on December 13, 2005, more fully explaining his claims.[48]  The Court referred the instant case to the Civil Rights Panel for appointment of counsel on March 23, 2006.[49]  Counsel was appointed in February of 2007[50] and although leave was granted for Plaintiff to file an amended complaint,[51] Plaintiff declined to do so.  The Court has carefully reviewed Defendants' Motion for Summary Judgment, Plaintiff's Response, the Reply, and all accompanying materials, and this matter is now ready for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[52]  An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[46] Defs.' Mot. Ex. K.

[47] Defs.' Mot. Ex. A; Document No. 5.

[48] Defs.' Mot. Ex. B; Document No. 15.

[49] Order, March 23, 2006 [Document No. 24].

[50] Order, February 16, 2007 [Document No. 33].

[51] Order, March 23, 2006; Order, April 3, 2007 [Document No. 34].

[52] Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

party."[53]  In examining these motions, all inferences must be drawn in the light most favorable to the nonmovants, and their allegations must be treated as true whenever they conflict with those of the movants and are supported by proper proofs.[54]  The Court will not, however, make any credibility determinations or weigh the evidence presented.[55]

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact.[56]  Once the movant has done so, the opposing party cannot rest on its pleadings.[57]  To defeat summary judgment, the nonmovant must come forward with probative evidence demonstrating the existence of genuine issues for trial.[58]  The nonmovant therefore must raise "more than a mere existence of a scintilla of evidence in its favor" for elements on which it bears the burden of production.[59]  An inference based upon speculation or conjecture will not create a material fact.[60]

## III. DISCUSSION

To prevail on his claims, which are all brought under 42 U.S.C. § 1983, Plaintiff must demonstrate that a state actor deprived him of a federally protected right.[61]  Plaintiff appears to

---

[53] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[54] Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004).

[55] Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 665 (3d Cir. 2002) (quoting Reeves v. Sanderson Plumbing Prods., 560 U.S. 133, 150 (2000)).

[56] Fed. R. Civ. P. 56(c).

[57] Celotex, 477 U.S. at 324.

[58] Id. at 323-24.

[59] Anderson, 477 U.S. at 252.

[60] Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

[61] Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000).

allege six claims: (1) overcrowding; (2) inadequate medical treatment of his hernia; (3) inadequate dental treatment; (4) failure to receive the proper diet; (5) failure to receive the proper medicine; and (6) breach of confidentiality with respect to his medication and HIV status.[62] These claims arise from alleged violations of Plaintiff's rights under the Eighth Amendment of the United States Constitution, prohibiting "cruel and unusual" punishment.[63]  Plaintiff brings a Monell claim against Defendant GEO, yet fails to identify any policy or custom that led to Plaintiff's harm.  With regard to Defendants Nardolillo and Fennell, Plaintiff fails to establish a basis upon which they could be liable under § 1983.  As a result, the Court will grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims against Defendants GEO, Nardolillo and Fennell.

### A.    Monell Claim Against Defendant GEO

Plaintiff seeks to hold Defendant GEO liable under § 1983 for violations of his federally protected rights.[64]  Defendant GEO is not liable solely because "injuries were inflicted by its

---

[62] See Defs.' Mot. Ex. B.

[63] Plaintiff's Response seems to argue that his claims arise under the Fourteenth Amendment.  (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. [Document No. 45] ("Pl.'s Resp.") at *8.)  The Supreme Court has held that "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."  Meachum v. Fano, 427 U.S. 215, 224 (1976).  While the Fourteenth Amendment provides protection for those who have yet to be convicted and sentenced, such as pre-trial detainees, it is actually the "Eighth Amendment [that] applies to sentenced prisoners."  Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) (citing Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987)); see also Bell v. Wolfish, 441 U.S. 520, 536 (1979) (quoting Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977)).  Accordingly, the Court will consider Plaintiff's claims as arising under the Eighth Amendment.

[64] Defendant GEO does not dispute that it acted under the color of state law, and that its actions are "fairly attributable to the State."  Lugar v. Edmondson Oil Co. Inc., 457 U.S. 922, 937 (1982).  Nevertheless, the Court notes that Defendant GEO, by providing services necessary to the functioning of a county prison,"performed a traditionally and exclusively public function."  Leshko v. Servis, 423 F.3d 337, 343 (3d Cir. 2005); see also West v. Atkins, 487 U.S. 42, 49 (1988) (holding that a prison physician, employed part-time by contract with the State, acted under the color of state law for purposes of § 1983 when treating inmates).  Hence, Defendant GEO, though a private corporation, acted under the color of state law and could be held liable under § 1983.

agents or employees."[65]  Liability will be imposed on Defendant GEO only if Plaintiff can

"provide evidence that there was a relevant [] policy or custom [of Defendant GEO's], and that

the policy caused the constitutional violation [] allege[d]."[66]  A policy is created by "the

decisionmaker [who] possesses final authority to establish [] policy with respect to the action

ordered."[67]  A custom, although it "has not received formal approval through . . . official

decisionmaking channels . . . '[is] so permanent and so well settled as to constitute a 'custom or

usage' with the force of law.'"[68]  Plaintiff has the burden of showing that a policymaker "is

responsible by action or acquiescence for the policy or custom."[69]

Although Defendant GEO cannot be held liable under § 1983 solely on a theory of

*respondeat superior*,[70] there are three situations where acts of employees are deemed the result of

a policy or custom of the entity for whom the employee works, thereby rendering the entity liable

under § 1983.  The first such situation is "where the appropriate officer or entity promulgates a

generally applicable statement of policy and the generally applicable statement of policy and the

subsequent act complained of is simply an implementation of that policy."[71]  "The second occurs

where no rule has been announced as policy but federal law has been violated by an act of the

---

[65] Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007) (citing Monell v. Dept. of Social Servs., 436 U.S. 658, 694 (1978)).

[66] Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).

[67] Pembaur v. Cincinnati, 475 U.S. 469, 482 (1986).

[68] Monell, 436 U.S. at 691 (citation omitted); see also Natale, 318 F.3d at 584 (quoting Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404 (1997)).

[69] Jiminez, 503 F.3d at 250.

[70] Natale, 318 F.3d at 583 (citing Monell, 436 U.S. at 691).

[71] Jimenez, 503 F.3d at 250 (quoting Natale, 318 F.3d at 584).

policymaker itself."[72]  In the last such situation, a policy or custom of inaction exists "where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."[73]

As an initial matter, Plaintiff does not argue that any of the acts of which he complains were actually perpetrated by a policymaker.  Thus, liability will not be found on such a basis.  Moreover, with the exception of the alleged breaches of Plaintiff's medical confidentiality, Plaintiff fails to highlight a specific policy, custom, practice or procedure that resulted in the alleged harm, namely overcrowding, inadequate medical and dental treatment, and failure to provide the directed medical diet and prescribed medications.[74]  Plaintiff does not argue that his constitutional rights were violated because Defendant GEO took no action, despite the obviousness of both the need for such action and the inadequacy of existing practices.  Thus, Plaintiff has no basis to seek to impose liability under § 1983 on Defendant GEO for overcrowding, inadequate medical and dental treatment, and failure to provide the proper diet and medication.  Hence, these claims will be dismissed.

---

[72] Id.

[73] Id.

[74] See Pl.'s Resp. at *6.  The Court reiterates that after counsel was appointed in February of 2007 (Order, February 16, 2007), Plaintiff was afforded two opportunities to amend his complaint to highlight a specific policy, custom, practice or procedure relating to these claims, and yet he declined to do so (Order, March 23, 2006; Order, April 3, 2007).  The Court granted two extensions of the deadline for fact discovery, so that fact discovery did not end until over a year after the appointment of counsel.  (Order, August 29, 2007 [Document No. 36]; Order, November 29, 2007 [Document No. 38]).  Still, not only did Plaintiff fail to amend his complaint, his Response to Defendants' Motion also fails to identify a policy, custom, practice or procedure as is necessary to support these claims against Defendant GEO.

11

As for Plaintiff's claim under § 1983 for the breach of his medical confidentiality, Plaintiff argues that Defendant GEO is liable because of Policy No. 802, and because the practices during Pill Call Times of which Plaintiff complains were a custom of Defendant GEO's.[75]  In the alternative, Plaintiff argues that Defendant GEO is liable under § 1983 because of its acquiescence in the failure of the procedures and practices during Pill Call Times to conform to its own policies.[76]

Defendant GEO's Policy No. 802 states that an inmate's medical information will be shared with correctional staff if there is reason for concern, such as communicable disease.[77]  Plaintiff, however, adduces no evidence that any of his medical information was actually shared pursuant to this policy.  In addition to other inmates and the correctional staff seeing into the MAR book, the only other breach claimed by Plaintiff is when a nurse indiscreetly spoke with Plaintiff while trying to give him the proper medication.[78]  There is no proof that this claimed breach occurred pursuant to Policy No. 802.  "There must be a 'direct causal link between a [] policy or custom and the alleged constitutional deprivation' to ground [] liability." [79]  Thus, liability for Plaintiff's claims cannot be premised on Policy No. 802.

Plaintiff also produced no evidence that the alleged lax practices during the Pill Call Times to which Plaintiff objects are a custom of Defendant GEO's.  There is no evidence that the

---

[75] Id. at *3-*4.

[76] Id. at *4.

[77] Defs.' Mot. Ex. H at *1; Pl.'s Resp. at *4.

[78] See Pl.'s Dep. 68:16-23.

[79] Jimenez, 503 F.3d at 250 (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

12

practices that allowed other inmates and the correctional staff to view Plaintiff's page in the MAR book were a well settled practice, especially in light of the July 22, 2005 memorandum. While it could be argued that this memorandum shows that the problems experienced by Plaintiff were not unique to him, it also plainly addresses the practices complained of by Plaintiff. The memorandum directs the medical staff to administer medication "with some degree of confidentiality" and to open the MAR book "only [to] the offender that you are giving medications too [sic]."[80] As a result, the Court finds that the practices during Pill Call Times to which Plaintiff objects are not a custom of Defendant GEO's. Thus, Plaintiff has not demonstrated a policy or custom, the implementation of which resulted in the subsequent, complained of acts. Defendant GEO cannot be held liable under § 1983 on this ground.

Plaintiff also argues that the actual distribution of medication to inmates failed to conform with Defendant GEO's policy regarding confidentiality.[81] While the aforementioned July 22, 2005 memorandum may indicate that there a problem with how Pill Call Times were conducted, the memorandum is also a clear attempt by Defendant GEO to control its employees, and to avoid the actions of which Plaintiff complains. Plaintiff has produced no evidence to the contrary. Thus, the Court does not find that Defendant GEO had a policy or custom of inaction, demonstrating a deliberate indifference to a need to control its agents or employees. Hence, liability under § 1983 cannot be premised on this basis either. As Plaintiff fails to demonstrate any grounds upon which to impose liability under § 1983 on Defendant GEO, Plaintiff's claims against that Defendant will be dismissed.

---

[80] Defs.' Mot. Ex. K.

[81] Pl.'s Resp. at *3-*4.

13

B.    **Claims Against Defendants Nardolillo and Fennell**

Plaintiff does not specify whether he brings his claims against Defendants Nardolillo and Fennell in their official capacities as warden and food service manager of GWHCF, respectively, or in their personal capacities. It is well-settled, however, that "an official capacity suit is, in all respects other than name to be treated as a suit against the entity."[82] Thus, an official capacity suit against Defendants Nardolillo and Fennell is duplicative of a suit against Defendant GEO, and would be dismissed as such. Hence, the Court will construe Plaintiff's claims against Defendants Nardolillo and Fennel as brought against them in their personal capacities.

For state actors in supervisory positions, such as Defendants Nardolillo and Fennell, liability under § 1983 can be imposed under two theories. First, "defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused constitutional harm.'"[83] A defendant will also "be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."[84]

Defendants do not argue that Defendants Nardolillo and Fennell are not policymakers. Assuming without deciding that Defendants Nardolillo and Fennell are policymakers, the Court has already found that Plaintiff produced no evidence of any policy or custom that resulted in the

---

[82] Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Monell, 436 U.S. at 690 n.55.

[83] A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).

[84] A.M., 372 F.3d at 586 (quoting Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

14

harm alleged, much less a policy or custom established or maintained by these Defendants.[85] Thus, liability under § 1983 against Defendants Nardolillo and Fennell cannot be premised on their positions as policymakers.  Moreover, Plaintiff has produced no evidence that either Defendant Nardolillo or Defendant Fennell participated in violating Plaintiff's rights, directed others to do so or knew of and acquiesced in the same.  Hence, Defendants Nardolillo and Fennell are not liable under § 1983 as supervisors either.  As there is not a valid basis upon which to impose liability under § 1983 on Defendants Nardolillo and Fennell, Plaintiff's claims against them will be dismissed.[86]

## IV.    CONCLUSION

All of Plaintiff's claims arise under § 1983.  Yet, Plaintiff could not establish a valid basis upon which to premise the imposition of liability under § 1983 on either Defendant GEO or Defendants Nardolillo and Fennell.  As a result, summary judgment will be granted as to all of Plaintiffs' claims against Defendants GEO, Nardolillo and Fennell.

An appropriate order follows.

---

[85] See supra Part III.A.

[86] As the Court finds that all of Plaintiff's claims against Defendants Nardolillo and Fennell will be dismissed for this reason, it need not decide whether or not they are entitled to qualified immunity.  Moreover, the Court also need not consider Plaintiff's individual claims on their merits.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES WALTER ROBINSON,     )
             )
    Plaintiff,       )
             )
      v.        )    **CIVIL ACTION**
             )    No. 05-cv-4995
GEO CORPORATION, et al.,     )
             )
    Defendants.      )

*FILED*
*DEC 12 2008*
*MICHAEL E. KUNZ, Clerk*
*Dep. Clerk*
*BY*

## ORDER

**AND NOW**, this 12th day of December 2008, upon consideration of Defendants' Motion for Summary Judgment (Document No. 42), Plaintiff's Response (Document No. 45), and Defendants' Reply (Document No. 46), and in accordance with the attached Memorandum Opinion, it is hereby **ORDERED** that said Motion is **GRANTED**, and all of Plaintiff's claims against Defendants GEO Corporation, Ronald Nardolillo and Nancy Fennell are **DISMISSED**.

The Clerk of Court shall **CLOSE** this case.

It is so **ORDERED**.

BY THE COURT:

CYNTHIA M. RUFE, J.